# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

VICTOR AVILA, et al.,                    :
                                         :
      Plaintiffs,                    :      Civil Action No.:    17-2685 (RC)
                                         :
      v.                             :      Re Document Nos.:    41, 45
                                         :
U.S. DEPARTMENT OF STATE,                :
                                         :
      Defendant.                     :

## MEMORANDUM OPINION

### GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Victor Avila, Jr. is a United States citizen and a retired Special Agent for U.S. Immigration and Customs Enforcement ("ICE"), a federal law enforcement agency under the Department of Homeland Security ("DHS").  Avila Decl. ¶ 2, Ex. 1 to Pls.' Cross Mot. Summ. J. ("Pls. MSJ"), ECF No. 45; Def.'s Mot. Summ. J. ("Def. MSJ") at 2 & n.2, ECF No. 41.[1]  Agent Avila was assigned to the ICE Attaché office at the U.S. Embassy in Mexico City, Mexico.  Avila Decl. ¶ 4.  In February 2011, Agent Avila and ICE Special Agent Jaime Zapata were on duty transporting equipment to Mexico City when they were ambushed by members of a Mexican cartel.  *Id.* ¶¶ 12–19.  The cartel members chased the agents by car, forced them off the highway, and fired nearly 100 bullets at their vehicle, killing Agent Zapata and seriously wounding Agent Avila.  *Id.*

---

[1] Defendant submitted an Errata to its motion for summary judgment, *see* ECF No. 42, adding a signed declaration and two exhibits.  The Court will consider these documents as part of Defendant's motion for summary judgment.

In the aftermath of the ambush, Agent Avila requested various FOIA documents from ICE and DHS, to little success. *Id.* ¶ 22.  In October 2017, Agent Avila turned to the State Department for answers.  He, along with co-plaintiff Judicial Watch, Inc., a non-profit organization (collectively, "Plaintiffs"), jointly submitted a FOIA/Privacy Act request to the State Department seeking "records concerning Victor Avila, Jr."  Pls. MSJ, Ex. 1 to Burke Decl. ("Request Letter") at 1; *see* 5 U.S.C. §§ 552, 552a.  The letter states that Plaintiffs "are particularly interested in communications among State Department personnel that refer to or relate to Mr. Avila and communications between the State Department and ICE and/or DHS personnel that refer to or relate to Mr. Avila."  *Id.*  The time frame of this request was from January 1, 2011 to the present.  *Id.*

The State Department processed Plaintiffs' request through State's Office of Information Programs and Services ("IPS").  Stein Decl. ¶ 1, page 57 of Def. MSJ.  After acknowledging that it had received the request, the State Department did not communicate further with Plaintiffs. Compl. ¶¶ 7–8.  Plaintiffs brought suit on December 15, 2017.  *Id.*  By April 2018, the State Department began making rolling productions to Plaintiffs.  Def.'s Statement of Undisputed Facts ("Def. St. Facts") ¶¶ 5–28, ECF No. 41.   On June 27, 2018, the State Department reached out to Plaintiffs to see if they would be willing to narrow the search:

- **Extradition-related documents.** Our search has identified a substantial volume of documents concerning extradition of individuals to the United States in connection with the attack. Would plaintiff be willing to exclude extradition related documents from the scope of the request?

- **Custodians.** Would plaintiff be willing to exclude records from any of the following custodians from the scope of the request? Bureau of Diplomatic Security (DS); Embassy Mexico City; Bureau of Consular Affairs (CA); Office of the Legal Adviser (L).

- **Time Frame.** The request's time frame is January 1, 2011 to the present. Would plaintiff be willing to narrow the timeframe?

Email from Melanie Hendry to Lauren Burke (June 27, 2018), Ex. 2 to Burke Decl.  Plaintiffs agreed to exclude extradition related documents from the request but did not agree to narrow custodians or timeframe.  *See* Email from Lauren Burke to Melanie Hendry (July 2, 2018), Ex. 3 to Burke Decl.

On August 2, 2018, the parties appeared before the Court for a status conference.  *See* August 2, 2018 Hearing Transcript, ECF No. 28.  The Court encouraged the parties to talk to each other and attempt to resolve disputes without the Court's intervention.  Plaintiffs agreed that all news clips and statements made by Agent Avila could be excluded from the search.  *Id.* at 4:1–4.

The State Department completed its search in April 2021.  Def. St. Facts ¶¶ 5–28.  All told, the State Department located 138 responsive documents.  Stein Decl. ¶ 30.  It released to Plaintiffs 22 documents in full and 85 documents in part; withheld from Plaintiffs 30 documents in full; and referred one document to the Drug Enforcement Agency ("DEA") for direct reply to Plaintiffs.  *Id.*  Throughout the search process, the State Department consulted the Federal Bureau of Investigation ("FBI") and the DEA for their views on a portion of responsive documents and implemented the FBI and DEA's withholding recommendations.  Def. MSJ at 3, 9 n.3.  The State Department submitted a *Vaughn* index explaining the basis for its withholdings, including the ones it implemented on behalf of the FBI and DEA.  *See generally* page 128 of Def. MSJ ("State *Vaughn* Index").  The FBI and DEA also submitted their own declarations and *Vaughn* indexes.  *See* Seidel Decl., located at page 180 of Def. MSJ; page 207 of Def. MSJ ("FBI *Vaughn* Index"); Hertel Decl., located at page 220 of Def. MSJ; page 233 of Def. MSJ ("DEA *Vaughn* Index").

## II.  LEGAL STANDARD

The purpose of FOIA "is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."  *NLRB. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).  FOIA was intended "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny."  *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976) (internal quotation marks omitted).  FOIA requests thus provide individuals with the opportunity to obtain access to federal agency records, except to the extent that such records are protected from public disclosure by one of nine exemptions.  *See* 5 U.S.C. § 552(a)(3), (a)(4)(B), (b), (c); *see also NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 136 (1975); *Jud. Watch, Inc. v. U.S. Dep't of Def.*, 847 F.3d 735, 738 (D.C. Cir. 2017).

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see, e.g.*, *Alyeska Pipeline Serv. Co. v. U.S. EPA*, 856 F.2d 309, 314 (D.C. Cir. 1988) (concluding that unsubstantiated claims of factual controversies cannot defeat a summary judgment decision in a FOIA case).  FOIA cases are typically resolved through summary judgment because in FOIA cases there is rarely any factual dispute; instead, these cases center on how the law is applied to the records at issue.  *See Pinson v. Dep't of Just.*, 236 F. Supp. 3d 338, 352 (D.D.C. 2017) ("FOIA cases typically and appropriately are decided on motions for summary judgment." (quoting *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009))); *see also Gray v. Southwest Airlines Inc.*, 33 F. App'x 865, 868 n.1 (9th Cir. 2002) (citing *Schiffer v. FBI*, 78 F.3d 1405, 1409 (9th Cir. 1996)).  Accordingly, in a FOIA suit, an agency is entitled to

summary judgment "if no material facts are genuinely in dispute and the agency demonstrates 'that its search for responsive records was adequate, that any exemptions claimed actually apply, and that any reasonably segregable non-exempt parts of records have been disclosed after redaction of exempt information.'" *Prop. of the People, Inc. v. Off. of Mgmt. and Budget*, 330 F. Supp. 3d 373, 380 (D.D.C. 2018) (quoting *Competitive Enter. Inst. v. EPA*, 232 F. Supp. 3d 172, 181 (D.D.C. 2017)). "This burden does not shift even when the requester files a cross-motion for summary judgment because 'the Government ultimately has the onus of proving that the documents are exempt from disclosure.'" *Hardy v. ATF*, 243 F. Supp. 3d 155, 162 (D.D.C. 2017) (brackets omitted) (quoting *Pub. Citizen Health Research Grp. v. FDA*, 185 F.3d 898, 904–05 (D.C. Cir. 1999)); *see also Stonehill v. U.S. Dep't of Just. Tax Div.*, No. 19-cv-03770, 2022 WL 407145, at *14 (D.D.C. Feb. 10, 2022) ("The government agency bears the burden of justifying its withholding of any requested material.").

In a FOIA suit, the court shall determine a motion for summary judgment de novo. *See* 5 U.S.C. § 552(a)(4)(B); *Life Extension Found., Inc. v. IRS*, 915 F. Supp. 2d 174, 179 (D.D.C. 2013). Therefore, when assessing non-disclosure decisions in a FOIA action, the court may rely solely on "affidavits or declarations if they describe 'the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Life Extension Found.*, 915 F. Supp. 2d at 179 (quoting *Mil. Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)); *see also Pronin v. Fed. Bureau of Prisons*, No. 17-cv-1807, 2019 WL 1003598, at *3 (D.D.C. Mar. 1, 2019). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Scudder v. Cent. Intel. Agency*, 254 F. Supp. 3d 135, 140 (D.D.C. 2017)

(quoting *Jud. Watch, Inc. v. U.S. Dep't of Def.*, 715 F.3d 937, 941 (D.C. Cir. 2013) (internal

citations omitted)).  However, exemptions are to be "narrowly construed," and "conclusory and

generalized allegations of exemptions are unacceptable."  *Bloche v. Dep't of Def.*, 370 F. Supp.

3d 40, 50 (D.D.C. 2019) (quoting *Morley v. CIA*, 508 F.3d 1108, 1115 (D.C. Cir. 2007)); *Prop.

of the People, Inc.*, 330 F. Supp. 3d at 380 (quoting *Morley*, 508 F.3d at 1114–15).  Accordingly,

an agency must do more than provide "summary statements that merely reiterate legal standards

or offer 'far-ranging category definitions for information.'"  *Citizens for Resp. & Ethics in Wash.

v. U.S. Dep't of Just.*, 955 F. Supp. 2d 4, 13 (D.D.C. 2013) (quoting *King v. U.S. Dep't of Just.*,

830 F.2d 210, 221 (D.C. Cir. 1987)).  "When an agency invokes an exemption, it must submit

affidavits that provide the kind of detailed, scrupulous description of the withheld documents that

enables a District Court judge to perform a de novo review."  *Tokar v. U.S. Dep't of Just.*, 304 F.

Supp. 3d 81, 89 (D.D.C. 2018) (cleaned up).  Notably, even if a FOIA exemption applies, an

agency cannot withhold information unless it also "reasonably foresees that disclosure would

harm an interest protected by" the exemption.  5 U.S.C. § 552(a)(8)(A)(i)(I); *see Reps. Comm.

for Freedom of the Press v. FBI*, 3 F.4th 350, 369 (D.C. Cir. 2021) (explaining the FOIA

Improvement Act of 2016's "foreseeable harm" requirement).[2]

---

[2] The Complaint also asserted a violation of the Privacy Act, 5 U.S.C. § 552a.  Compl. ¶ 15.  The State Department claims it did not maintain a system of records subject to the Privacy Act, and thus only produced under FOIA.  Def. MSJ at 1 n.1; Stein Decl. ¶ 34 n.1.  The FBI and DEA invoked Exemption (j)(2) of the Privacy Act, which exempts investigative files from agencies whose principal function pertains to law enforcement.  5 U.S.C. § 552a(j)(2); *see* Seidel Decl. ¶ 7 (FBI criminal investigation files); Hertel Decl. ¶¶ 16–18 (DEA criminal investigative records).  Plaintiffs' briefs did not contest the application of Exemption (j)(2), or raise any Privacy Act arguments for that matter.  Accordingly, the Court will only analyze the parties' FOIA dispute.  *See Pinson v. U.S. Dep't of Just.*, No. 18-486, 2020 WL 1509517, at *22 n.6 (D.D.C. Mar. 30, 2020).

### III.  ANALYSIS

### A.  Adequacy of Search

"[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Jennings v. U.S. Dep't of Just.*, 230 F. App'x 1, 1 (D.C. Cir. 2007) (quoting *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003)).  "An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Valencia–Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (internal quotation marks and citations omitted).  The agency does not need to conduct a perfect search.  *See Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986).  But it must show that it "conduct[ed] a good faith, reasonable search of those systems of records likely to possess the requested records." *Pinson v. Dep't of Just.*, 313 F. Supp. 3d 88, 107 (D.D.C. 2018) (quoting *Marino v. Dep't of Just.*, 993 F. Supp. 2d 1, 9 (D.D.C. 2013) (internal quotation marks omitted)).  To make this showing, an agency must submit "[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed." *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  The burden then "shifts to the FOIA requester to produce countervailing evidence suggesting that a genuine dispute of material fact exists as to the adequacy of the search." *Dillon v. U.S. Dep't of Just.*, 444 F. Supp. 3d 67, 89 (D.D.C. 2020) (quoting *Pinson*, 313 F. Supp. 3d at 107 (internal quotation marks omitted)).  "Agency affidavits attesting to a reasonable search are afforded a presumption of good faith and can be rebutted only with evidence that the agency's search was not made in good faith." *Pinson v. U.S. Dep't of Just.*, 160 F. Supp. 3d 285, 293–94 (D.D.C. 2016) (internal quotations marks and citation omitted).

The State Department's efforts to locate responsive documents is detailed in the affidavit of IPS Director Eric F. Stein.  *See generally* Stein Decl.  In response to Plaintiffs' request, IPS evaluated which offices, overseas posts, and other record systems within the State Department that were reasonably expected to contain the requested records.  *Id.* ¶ 31.  In total, nine offices or records systems were searched.  *Id.* ¶ 33.

Plaintiffs primarily complain the search was inadequate on two main grounds.  First, Plaintiffs claim the search methodology was deficient because different State Department components used different search terms.  Second, Plaintiffs protest that using Agent Avila's name as the sole search term created an unreasonably narrow search.  The Court will examine each of these arguments in turn.

### 1.  Different Search Methodologies

Agencies have "discretion in crafting a list of search terms that they believe to be reasonably tailored to uncover documents responsive to the FOIA request."  *Muckrock, LLC v. CIA*, 300 F. Supp. 3d 108, 125 (D.D.C. 2018) (quoting *Agility Pub. Warehousing Co. K.S.C. v. Nat'l Sec. Agency*, 113 F. Supp. 3d 313, 339 (D.D.C. 2015)).  Searching for records requires "both systemic and case-specific exercises of discretion and administrative judgment and expertise," and is "hardly an area in which the courts should attempt to micro-manage the executive branch."  *Schrecker v. Dep't of Justice*, 349 F.3d 657, 662 (D.C. Cir. 2003).  "[T]he fact that different offices used different search terms" does not "undermine the reasonableness of the State Department's search."  *See Jud. Watch, Inc. v. U.S. Dep't of State,* No. 12-cv-893, 2017 WL 3913212, at *9 (D.D.C. Sept. 6, 2017) (collecting cases).

Here, the State Department's various components all used Agent Avila's name as a search term, but some components voluntarily included additional search terms such as

"Operation Fast and Furious" and "Zapata." Def.'s Reply in Support of Mot. Summ. J. & Opp'n to Pls.' Cross-Mot. Summ. J. ("Def. Reply") at 10–11, ECF No. 49;[3] Stein Decl. ¶¶ 50, 64. According to Director Stein, the agency "relies on the knowledge and expertise of the employees of each bureau/office/post to determine the files and locations reasonably likely to house responsive records and the best means of locating such records, as these employees are in the best position to know how their files are organized." Stein Decl. ¶ 35. The Court finds that the searches were adequate in this regard. *See Jud. Watch, Inc. v. Dep't of State*, 177 F. Supp. 3d 450, 458 (D.D.C. 2016) ("The different searches were conducted by different custodians who each applied terms designed to elicit responsive records in the system being searched."), *aff'd sub nom. Jud. Watch, Inc. v. United States Dep't of State*, 681 F. App'x 2 (D.C. Cir. 2017).

### 2. Single Search Term

"In general, a FOIA petitioner cannot dictate the search terms for his or her FOIA request." *Bigwood v. U.S. Dep't of Def.*, 132 F. Supp. 3d 124, 140 (D.D.C. 2015). Nonetheless, the agency's search must be "reasonably calculated to uncover all relevant documents." *Valencia–Lucena*, 180 F.3d at 325 (D.C. Cir. 1999) (citation omitted). And "an agency . . . has a duty to construe a FOIA request liberally." *Nation Mag. v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995) (citing *Truitt v. Dep't of State,* 897 F.2d 540, 544–45 (D.C. Cir. 1990).

Plaintiffs take issue with the fact that many components within the State Department used Agent Avila's name as the only search term. According to Director Stein, "Victor Avila" was the sole search term used by many State Department components. *See* Stein Decl. ¶¶ 37, 39, 46, 63, 65, 66, 70, 88. The Court agrees that this was an inadequate search method. For starters,

---

[3] Defendant submitted an Errata to its reply, *see* ECF No. 50, adding the declaration of Susan C. Weetman. The Court will consider this as part of Defendant's reply.

searching "Victor Avila" alone "may have missed documents that did not identify him by his full name." *Pulliam v. EPA*, 235 F. Supp. 3d 179, 194 (D.D.C. 2017). A search that includes the terms "Avila, Jr." and "Avila," for example, would likely cover more responsive records. This defect raises concerns about whether the search process produced all responsive documents.

The State Department's problems do not end there. More significantly, Plaintiffs point out that the State Department's search unduly focused on Agent Avila's name while ignoring the broader scope of the request. Recall that Plaintiffs requested "all records *concerning* Victor Avila, Jr." including "communications among State Department personnel that refer or *relate to* Mr. Avila and communications between State Department and ICE and/or DHS personnel that refer or *relate to* Mr. Avila." Request Letter at 1 (emphases added). The State Department's search plainly covered documents that "refer" to Mr. Avila, but not necessarily records that "concern" or "relate to" Mr. Avila. *Id.* The State Department's use of the sole search term "Victor Avila" would miss records of the attack that do not specifically mention Agent Avila's name, but which are nonetheless responsive to this request.[4]

Precedent also supports Plaintiffs' broader view. In *Nation Magazine*, the D.C. Circuit held that it was inadequate for the agency to only search for Ross Perot's name when the FOIA requester had also asked for "all records and documents *pertaining to* Mr. Perot." 71 F.3d 885, 890 (D.C. Cir. 1995) (emphasis added). The court explained that the "explicit" use of the words "pertaining to" "alert[ed] the agency that appellants sought information about Perot, even if it was not indexed under his name." *Id.* So too, here. The words "concerning" and "relate to"

---

[4] Plaintiffs point out that "the majority of responsive records" originated from State Department components that conducted searches using more than just Agent Avila's name in their search. *See* Pls. MSJ at 13 n.1. The Court's analysis does not rest on this observation, however, because Plaintiffs did not identify any records produced by those offices that do not contain Agent Avila's name.

show that Plaintiffs seek more than just records that have Agent Avila's name on them.  *See Bartko v. United States Dep't of Just.*, No. 13-cv-1135, 2014 WL 12787640, at *4 (D.D.C. Sept. 9, 2014) (under *Nation Magazine*, "analogous language [should] signal an agency to conduct a broad subject-matter search, as well as a search by name or personal identifier"); *accord Nicholls v. U.S. Off. of Pers. Mgmt.*, 863 F. Supp. 2d 4, 11 (D.D.C. 2012) (phrase "relate to" in FOIA request "denotes only some connection or reference to the relevant object").  Thus, the State Department's use of only Agent Avila's name as the search term was inadequate.  *See Pulliam*, 235 F. Supp. 3d at 194 ("[T]he use of just these two names demonstrates that [the agency] did not understand the scope of plaintiff's request, which sought all documents *relating* to the complaint filed by [the subject]." (emphasis in original)).

The State Department argues that it was reasonable to interpret the FOIA request as "excluding all records that did not name Avila" and that Plaintiffs should "know[] better" if they "wanted a broader range of documents than [the] request explicitly sought."  Def. Reply at 5 & n.3.  But the State Department "has a duty to construe a FOIA request liberally."  *Nation Magazine*, 71 F.3d at 890.  Read in context, Plaintiffs' letter plainly seeks information about the February 15, 2011 attack that severely wounded Agent Avila.  The letter describes the attack in detail, including the date, location, victims, circumstances, and the government program that allegedly sourced the weapons used in the attack.  Request Letter at 1.  Immediately following this description—and still on the first page—the letter states Plaintiffs' search request.  Given this context, and the broad meaning of the words "concerning" and "relate to," it is "improbable" to read the letter as solely seeking records with Agent Avila's name on them.  *LaCedra v. Exec. Off. for U.S. Att'ys*, 317 F.3d 345, 348 (D.C. Cir. 2003).  Read as a whole, the letter is "reasonably susceptible to the broader reading."  *Id.*

The State Department's position is further undermined by the fact that it *knew* Plaintiffs sought information about the attack.  When "'an agency becomes reasonably clear as to the materials desired,' the agency must provide them even if the request is not a 'model of clarity.'" *Khatchadourian v. Def. Intel. Agency*, 453 F. Supp. 3d 54, 66 (D.D.C. 2020) (quoting *Truitt*, 897 F.2d at 544).  During the search process, counsel for the State Department emailed counsel for Plaintiffs to discuss the possibility of excluding "a substantial volume of documents concerning extradition of individuals to the United States *in connection with the attack*."  Ex. 2 to Pls. MSJ (emphasis added).  The State Department did not need to provide any context for "the attack" because the request letter already made this obvious.  The State Department's brief also admits that it was "keenly aware of the salient facts" and "details related to or concerning Mr. Avila and [his] deadly assignment."  Def. Reply at 18 (citation omitted).  Despite knowing what Plaintiffs sought, the State Department conducted a narrow search by only searching for documents that had Agent Avila's name on it.  This search would miss documents that, for instance, discuss "the Zapata incident" or "travel conditions near San Lius Potosi on February 15, 2011" which do not explicitly mention Agent Avila.  In short, the State Department's search was not "reasonably calculated to uncover all relevant documents."  *Valencia–Lucena*, 180 F.3d at 325 (internal quotation marks and citation omitted).

The State Department's other arguments also miss the mark.  It claims that it has no obligation to "search[] for documents beyond the clear four corners of [the] request."  Def. Reply at 6.  While an agency is "not obliged to look beyond the four corners of the request for leads to the location of responsive documents," *Kowalczyk v. Dep't of Justice,* 73 F.3d 386, 389 (D.C. Cir. 1996), Plaintiffs' request for records that "relate to" and "concern" Agent Avila fall squarely within the request itself.  The request itself describes Agent Avila's relation to the attack, and by

extension, the State Department—*i.e.*, it did not request documents concerning Agent Avila devoid of context.  The State Department's cramped interpretation, by contrast, would "read[] the just-quoted phrase out of the letter." *LaCedra*, 317 F.3d at 348.

The State Department also contends that it was reasonable to interpret Plaintiffs' request narrowly because Agent Avila had previously filed a broader FOIA request to the State Department in connection with a separate lawsuit.  According to Director Stein, the former "request is broader than, but inclusive of, the FOIA request at issue in this case."  Stein Decl. ¶ 82 n.9.  The State Department argues that "[a]gainst that backdrop, it could not have been unreasonable for the Department to understand the later FOIA request naming only Avila was intended to be commensurately limited in scope."  Def. Reply at 5 n.3.  The Court does not doubt that Agent Avila's first FOIA request, which covered "nine victims, four incidents, and nearly 30 individuals," was broader in scope. *Id.*  But that does not diminish the scope of the current request, whose words must still be given effect.  As discussed above, the letter's focus on the attack, coupled with the broad meaning of "concerning" and "relate to," require more than Agent Avila's name as a search term.

Finally, the State Department's reliance on *Nolen v. Dep't of Just.*, 146 F. Supp. 3d 89 (D.D.C. 2015), is misplaced.  In that case, Plaintiff requested from the FBI "any and all records . . . relating or referring" to a deceased writer. *Id.* at 91.  The court held that the FBI did not need to search for the deceased's "known associates and affiliated organizations," because the request made no reference to any affiliated organizations, and the FBI's searches of the deceased would likely have captured responsive records about known associates. *Id.* at 94–95. *Nolen* is inapposite here because Plaintiffs' request made clear mention of the attack, so the State Department has no excuse not to search for it.  This case is also unlike *Nolen* because the Court

finds it unlikely that Agent Avila's name would be mentioned every time in conjunction with the attack. Thus, a search for Agent Avila's name only would not be "reasonably calculated to uncover all relevant documents." *Valencia–Lucena*, 180 F.3d at 325.

In conclusion, the State Department must conduct a more adequate search. It need not necessarily adopt Plaintiffs' search terms, but it must broaden its search for records about the February 2011 attack. The State Department may continue to exclude those categories of records Plaintiffs have agreed to exclude.[5]

### B. FOIA Exemptions

To move the remaining issues in this case forward, the Court proceeds to analyze the parties' arguments with respect to the searches that the State Department did conduct. If the State Department locates additional responsive records as a result of additional searches, it must reassert any applicable exemptions instead of resting on the Court's conclusions here. *See Davidson v. United States Dep't of State*, 206 F. Supp. 3d 178, 193 (D.D.C. 2016), *aff'd*, 728 F. App'x 7 (D.C. Cir. 2018).

The State Department withheld 116 documents in part or whole by invoking a FOIA exemption. Plaintiffs agree with the basis for some of these withholdings, which resolves some

---

[5] Plaintiffs' other arguments regarding search adequacy are meritless. First, Plaintiffs claim that the State Department did not conduct searches of non-official electronic messaging accounts. Pls. MSJ at 18–19. But even before the timeframe of this FOIA request (January 1, 2011), federal law and State Department policy have required that "official business conducted on non-official platforms and devices be maintained as a Department record." Def. Reply at 19–20; Weetman Decl. ¶¶ 22–24. Without any evidence to the contrary, the Court is persuaded that "communications on non-government electronic messaging applications would have been identified and collected during the search products like any other responsive records." Def. Reply at 19–20. Second, Plaintiffs complain that the State Department did not explain its process for searching paper records. Pls. MSJ at 15–16. But the State Department has explained that each component "chooses how best to organize and maintain its own files" and has assured the Court that its employees "read paper records for responsiveness." Def. Reply at 17–18.

of the disputes in this case.[6]  Three categories remain in dispute: Exemption 1 (by executive

order); Exemption 3 (by statute); and Exemption 5 (unavailable to a party in litigation).  *See* 5

U.S.C. §§ 552(b)(1), (b)(3) & (b)(5).  The Court will examine each in turn.

### 1.  Exemption 1[7]

5 U.S.C. § 552(b)(1) exempts records "specifically authorized under criteria established

by an Executive order to be kept secret in the interest of national defense or foreign policy and

[which] are in fact properly classified pursuant to such Executive order."  5 U.S.C. §

552(b)(1); *see also Larson v. Dep't of State*, 565 F.3d 857, 861 (D.C. Cir. 2009).  The applicable

classification order, Executive Order ("E.O.") No. 13,526, 75 Fed. Reg. 707 (Dec. 29, 2009), sets

forth "both substantive and procedural criteria for classification."  *Jud. Watch, Inc. v. U.S. Dep't

of Def.*, 715 F.3d 937, 941 (D.C. Cir. 2013).  Substantively, "classified information must pertain

to at least one of eight subject-matter classification categories" found in E.O. 13,526, § 1.4 and

"disclosure of that information must reasonably be expected to cause some degree of harm to

national security."  *Id.*  Procedurally, the information must be classified "by an individual with

original or derivative classification authority" and "documents must be marked with several

pieces of information, including the identity of the classifier and instructions for

---

[6] *See* Pls. MSJ at 18 n.2, 19 n.3, 19 n.4, 19 n.5, 20, 23.  Plaintiffs claimed that they no longer challenge two documents discussing visas because the State Department invoked Exemption 3 under the Immigration and Naturalization Act.  *Id.* at 19 n.3.  But the State Department only claimed this exemption for one *paragraph* of Document 18 and one *paragraph* of Document 23.  Accordingly, the Court will still analyze whether other portions of Documents 18 and 23 are properly withheld.

[7] Plaintiffs ask the Court to conduct *in camera* review of records over which the State Department claims Exemption 1. Pls. MSJ at 19.  "[A] district court should not undertake *in camera* review of withheld documents as a substitute for requiring an agency's explanation of its claimed exemptions."  *Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 997 (D.C. Cir. 1998).  The Court declines to conduct *in camera* review here because it will afford the State Department another chance to explain its claimed exemptions in more detail when necessary.

declassification." *Id.*; *see also Elec. Priv. Info. Ctr. v. U.S. Dep't of Just.*, 296 F. Supp. 3d 109, 124 (D.D.C. 2017) (discussing E.O. 13,526).

When reviewing agency justifications for Exemption 1, courts in this Circuit have "consistently deferred to executive affidavits predicting harm to the national security[ ] and have found it unwise to undertake searching judicial review." *Nat'l Sec. Couns. v. CIA.*, 960 F. Supp. 2d 101, 164–65 (D.D.C. 2013) (quoting *Ctr. for Nat'l Sec. Stud. v. U.S. Dep't of Justice,* 331 F.3d 918, 927 (D.C. Cir. 2003)); *see also James Madison Project v. CIA*, 605 F. Supp. 2d 99, 109 (D.D.C. 2009) (citing *Schlesinger v. CIA*, 591 F. Supp. 60, 67 (D.D.C. 1984), then citing *Halperin v. CIA*, 629 F.2d 144, 148 (D.C. Cir. 1980)).  Courts thus "accord substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record." *ACLU v. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011) (quoting *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007)).

Here, Plaintiffs dispute application of Exemption 1 to eight documents.  Director Stein confirmed that the withheld information in these documents continues to meet the classification criteria of E.O. 13,526.  Stein Decl. ¶ 97.  Director Stein explained that the information in these withheld records was properly classified because it involved "foreign government information," E.O. 13,526 § 1.4(b), "intelligence activities, sources, or methods," *id.* §1.4(c), and "foreign relations or foreign activities of the United States," *id.* § 1.4(d), the disclosure of which would damage national security.  The Court will examine these bases for withholding.

Document 18 is a 40-page briefing paper prepared for Assistant Secretary Eric Boswell's meeting with U.S. Ambassador to Mexico Tony Wayne.[8]  The State Department withheld the

---

[8] Document numbers correspond to the State Department's *Vaughn* index.  *See generally* State *Vaughn* Index.

document in part and classified portions as "SECRET."  It invoked exemptions under E.O. 13,526 § 1.4(b), (c), and (d), but offered no description of what it withheld or how much it withheld under each subsection.  The State Department's "blanket reference" to what it will only describe as "information" is conclusory.  *Bloche v. Dep't of Def.*, 414 F. Supp. 3d 6, 53 (D.D.C. 2019).  Until the State Department better describes these withholdings (without disclosing classified details), "it is premature for the Court to draw conclusions as to whether the document is properly withheld."  *Id.* at 54.

Document 19 is a 13-page incident report on the attack, authored by the State Department.  It withheld the document in part and classified portions as "SECRET."  The *Vaughn* index describes the incident report's assessments of certain related Mexican policies and efforts, and how disclosure of this information could jeopardize bilateral relations and cooperation with Mexico.  Given this greater level of specificity compared to Document 18, the State Department has met its "light" burden to detail how the disclosure of this information might harm national security.  *ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 624 (D.C. Cir. 2011). The Court is satisfied that this document is exempt under E.O. 13,526 § 1.4(b).

Document 102 is a cable of confidential discussions between the United States and the Government of Mexico regarding Mexican senators' calls for the foreign secretary to testify. The State Department withheld the document in part and classified portions as "CONFIDENTIAL."  The cable contains deliberations and assessments of Mexican foreign policy, which if exposed would undermine Mexico's willingness to share information in confidence with the United States.  The Court is satisfied that this document is exempt under E.O. 13,526 § 1.4(b) and (d).

Documents 103–105 are cables that "set the scene" for senior U.S. government official visits to Mexico. The State Department withheld the documents in part and classified portions as "CONFIDENTIAL." The cables evaluate Mexican policy and governance, regional security, and assessments of certain foreign officials, which if exposed would inject friction into U.S.-Mexican relations. The Court is satisfied that this withholding is permitted under E.O. 13,526 § 1.4(d).

Document 106 is a 38-page spreadsheet that explains the Permanent Coordinating Committee's decision for not convening an Accountability Review Board regarding past security incidents involving U.S. personnel. The State Department withheld the documents in full and classified it "SECRET." The Court finds that E.O. 13,526 § 1.4(d) applies because the document details specific security incidents involving U.S. Government personnel. Disclosure would improperly expose U.S intelligence activities to the public and risk creating opportunities to target U.S. personnel.

Document 115 is a 2-page cable that contains information about the attack. The State Department withheld the document in full and classified it "SECRET." It claims that withholding is proper because the cable pertains to intelligence activities, sources, or methods protected by E.O. 13,526 § 1.4(c). As with Document 18, the Court lacks enough information to decide whether withholding is proper. Until the State Department better describes these withholdings (without disclosing classified details), "it is premature for the Court to draw conclusions as to whether the document is properly withheld." *Bloche*, 414 F. Supp. 3d at 54.

## 2. Exemption 3

Exemption 3 permits the withholding of records that are "specifically exempted from disclosure by [a different] statute . . . if that statute . . . (i) requires that the matters be withheld

from the public in such a manner as to leave no discretion on the issue; or (ii) establishes

particular criteria for withholding or refers to particular types of matters to be withheld."  5

U.S.C. § 552(b)(3).  Section 3024(i)(1) of the National Security Act is a valid Exemption 3

statute.  *See DiBacco v. U.S. Army*, 795 F.3d 178, 183 (D.C. Cir. 2015).

Plaintiffs contest the State Department's withholding of Document 115 under Exemption

3.  The State Department invoked this exemption under the National Security Act, claiming that

it "protect[s] intelligence sources and methods from unauthorized disclosure."  50 U.S.C. §

3024(i)(1).  As described previously for Document 115, the Court lacks enough information to

decide whether withholding is proper.  It is true that unlike Exemption 1, Exemption 3's

"applicability depends less on the detailed factual contents of specific documents."  *DiBacco*,

795 F.3d at 197.  But the State Department has provided the Court with an inadequate

description, and thus it must revisit this document and provide more detail.

### 3.  Exemption 5

The bulk of the contested withholdings fall under Exemption 5.  This exemption covers

"inter-agency or intra-agency memorandums or letters that would not be available by law to a

party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  Exemption 5

protects documents that would be privileged in ordinary civil litigation.  *Loving v. Dep't of Def.*,

550 F.3d 32, 37 (D.C. Cir. 2008).  "[T]he government agency bears the burden of showing that

the privilege properly applies."  *Heartland All. for Hum. Needs & Hum. Rts. v. U.S. Immigr. &

Customs Enf't*, 406 F. Supp. 3d 90, 121 (D.D.C. 2019).  The State Department relied on three

aspects of this exemption: (a) the deliberative process privilege; (b) the attorney-client privilege;

and (c) the attorney work-product doctrine.  The Court will explain each privilege before proceeding to examine whether they apply to the withheld documents.[9]

### a. Deliberative Process, Attorney Work-Product, and Attorney-Client Privilege

The deliberative process privilege "protect[s] agencies from being 'forced to operate in a fishbowl.'" *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021) (quoting *EPA v. Mink*, 410 U.S. 73, 87 (1973)).  It covers documents that are both predecisional and deliberative.  *See id.* at 785–86; *see also Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 512 (D.C. Cir. 2011).  "A document is predecisional if it was 'prepared in order to assist an agency decisionmaker in arriving at his decision,' rather than to support a decision already made." *Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992) (quoting *Renegotiation Bd. v. Grumman Aircraft*, 421 U.S. 168, 184 (1975)).  However, a document that was predecisional when prepared "can lose that status if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

A document is deliberative if "it reflects the give-and-take of the consultative process." *Am. Oversight v. U.S. Postal Serv.*, No. 20-cv-2580, 2021 WL 4355401, at *8 (D.D.C. Sept. 23, 2021) (quoting *Coastal States*, 617 F.2d at 866).  "To demonstrate that a document is deliberative, the government must explain the role it played in administrative decisionmaking— the 'who, what, where, and how' of internal governmental deliberations." *Campaign Legal Ctr.*

---

[9] The State Department asserted the deliberative process privilege on all of the records that are the subject of discussion here—about 75 documents.  It then asserted the attorney-client privilege on a subset of this group.  Finally, it asserted the attorney-work product doctrine on an even smaller subset of this group.  Accordingly, the Court will focus its analysis on the deliberative process privilege and, where appropriate, examine if another privilege provides justification for withholding.

*v. U.S. Dep't of Just.*, 34 F.4th 14, -- (D.C. Cir. 2022) (quoting *Jud. Watch, Inc. v. Dept. of Just.,* 20 F.4th 49, 57 (D.C. Cir. 2021)).

Next up, the attorney-client privilege protects confidential communications between an attorney and a client. *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 253 (D.C. Cir. 1977).  It "protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." *Fisher v. United States*, 425 U.S. 391, 403 (1976).  "In the governmental context, the 'client' may be the agency and the attorney may be an agency lawyer." *Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C. Cir. 1997).  To establish the applicability of the attorney-client privilege, the agency must show that: "(1) the holder of the privilege is . . . a client; (2) the person to whom the communication is made is a member of the bar . . . and, in connection with the communication at issue, is acting in his or her capacity as a lawyer; (3) the communication relates to a fact of which the attorney was informed by his client, outside the presence of strangers, for the purpose of securing legal advice; and (4) the privilege has been claimed by the client." *Jud. Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 841 F. Supp. 2d 142, 153–54 (D.D.C. 2012) (quoting *In re Sealed Case*, 737 F.2d 94, 98–99 (D.C. Cir. 1984)). "[O]btaining or providing legal advice" must have been "one of the significant purposes of the attorney-client communication," but it need not be "the primary purpose." *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 760 (D.C. Cir. 2014).

Last, but not least, the attorney work-product doctrine "provides a working attorney with a 'zone of privacy' within which to think, plan, weigh facts and evidence, candidly evaluate a client's case, and prepare legal theories." *Coastal States*, 617 F.2d at 864.  The key limitation to this doctrine is that the document must have been "prepared in contemplation of litigation, or in the course of preparing for trial." *Id.* at 865.  For an agency to meet its burden of showing the

attorney work-product doctrine applies to a given document, "it must (1) provide a description of the nature of and contents of the withheld document, (2) identify the document's author or origin, (3) note the circumstances that surround the document's creation, and (4) provide some indication of the type of litigation for which the document's use is at least foreseeable." *Ellis v. U.S. Dept. of Just.*, 110 F. Supp. 3d 99, 108 (D.D.C. 2015) (citing *In re Sealed Case*, 146 F.3d 881, 884 (D.C. Cir. 1998)).

### b. *Application of Exemption 5 Privileges*

The documents that the State Department claims are subject to an Exemption 5 privilege can be grouped into four buckets: (i) drafts; (ii) outward-facing deliberations; (iii) emails reflecting policy and legal advice; and (iv) other records.

i. Drafts

Draft documents frequently fall under the deliberative process privilege because they precede a final decision and reflect an agency's deliberations.  A draft document "is, by definition, a preliminary version of a piece of writing subject to feedback and change." *U.S. Fish & Wildlife Serv.*, 141 S. Ct. at 786; *see also Competitive Enter. Inst. v. Off. of Sci. & Tech. Pol'y*, 161 F. Supp. 3d 120, 129–30 (D.D.C. 2016) (collecting cases in which "courts in this District have held . . . that drafts are protected by the deliberative process privilege").

Here, Documents 2–5 are draft diplomatic notes and cables from State Department officials addressed to Mexico on the issue of waiving immunity for Agent Avila to provide a declaration regarding the attack.  Similarly, Documents 37–60 are a series of email chains discussing the wording and content of the proposed cable and diplomatic note to Mexico regarding this issue.  In addition, Document 20 is a draft of a proposed cable on a different subject and contains proposed cable language.  These documents are predecisional because they

predate the final versions of the notes and cables and were generated to help formulate final positions.  They are deliberative because they involve the agency's back-and-forth consideration of the messaging of foreign communications.  The Court finds that these records fall under the deliberative process privilege, and if released would chill agency deliberations on how to formulate communications with Mexico.

Documents 6–8 include a State Department email chain discussing a draft recommendation of guidelines for U.S. law enforcement officers operating in Mexico.  The recommendation says "WORKING DRAFT" on it.  A PowerPoint presentation summarizes a working group's discussions on the recommendation's contents while noting that official guidelines have not been established.  These documents are predecisional because as drafts, they predate the final versions of the guidelines and presentation, and were generated in the process of the agency reaching final decisions on these issues.  They are deliberative because they discuss and propose language for the guidelines and presentation, reflecting the give-and-take of the consultative process.  These documents fall under the deliberative process privilege, and if released would undermine the agency's formulation of guidelines for U.S. law enforcement officers operating in Mexico.

Document 9 is a draft memo from State Department officials regarding proposed investigative actions on the attack.  It proposes language and considers possible agency action to coordinate with those investigations.  Likewise, Document 23 is a draft report created by U.S. government officials of U.S. activities in Mexico that includes redlines of proposed language and comments suggesting information to include.  These documents are predecisional because they predate any final agency positions on investigations concerning the attack and reports of activities in Mexico, and were created to help the agency formulate positions on these issues.

They are deliberative because the proposed language and edits in these documents reflect agency

deliberations on these issues.  The Court finds that these records fall under the deliberative

process privilege, and if released would hinder investigatory discussions, as well as hamper the

ability of agency officials to comment freely on a non-final report.

    ii.  Outward-Facing Deliberations

    The next bucket of records concern content related to the agency's outward-facing

statements.  Agency deliberations about public statements routinely qualify for the deliberative

process privilege.  *See Access Reps. v. Dep't of Just.*, 926 F.2d 1192, 1196 (D.C. Cir. 1991)

(memo resembling agency talking points qualified under deliberative process privilege); *Am. Ctr.

for L. & Just. v. United States Dep't of Just.*, 325 F. Supp. 3d 162, 171–72 (D.D.C. 2018) ("[T]he

overwhelming consensus among judges in this District is that the privilege protects agency

deliberations about public statements, including the use of talking points."); *Am. Ctr. for L. &

Just. v. U.S. Dep't of Just.*, 334 F. Supp. 3d 13, 21 (D.D.C. 2018) ("[C]ourts have generally

found that documents created in anticipation of press inquiries are protected." (citation omitted)).

    In this case, Documents 10–17 are State Department emails that discuss press inquiries

and deliberations and recommendations on how to respond.  Document 21 is a checklist prepared

for a high-level meeting between U.S. and Mexican officials which recommends subjects of

discussion and objectives for the meeting.  Documents 61–63 are emails that discuss preparations

to brief Congress on security issues in Mexico, including an evaluation of what to present to

Congress.  Documents 79–82 are emails that discuss how to brief the U.S. House Committee on

Homeland Security, including recommendations on how to engage with the committee.

Document 100 is a draft agenda and talking points for an interagency Accountability Review

Board addressing the attack that recommends subjects of discussion and objectives for the

meeting.  All of these documents are predecisional because they were generated before the agency's final position on these issues for the purpose of assisting the agency in taking these outward-facing positions.  They are also deliberative because they reflect the agency's thought process in formulating its public statements.  The Court finds that these records fall under the deliberative process privilege because they are quintessentially "agency deliberations about public statements." *Am. Ctr. for L. & Just.*, 325 F. Supp. 3d at 171–72.  Disclosure would frustrate an agency's ability to prepare the way it presents information to the public.

Document 18, however, poses more of a problem.  It is a briefing paper prepared for Assistant Secretary Eric Boswell's meeting with U.S. Ambassador to Mexico Tony Wayne.  The State Department claims that information in this document is deliberative because it "reflects consideration related to" "a counterintelligence issue."  State *Vaughn* Index at 15.  This vague assertion does not allow the Court to determine whether the withheld portions of the briefing paper actually "reflect[] the give-and-take of the consultative process.'"  *Am. Oversight*, 2021 WL 4355401, at *8 (citation omitted).  It may be possible that portions of the briefing paper "provide only facts," in which case those portions would not be protected by this privilege. *McGrady v. Mabus*, 635 F. Supp. 2d 6, 18 (D.D.C. 2009) (declining to extend withholding to document containing facts which did not reveal the "substance of the deliberations").  The State Department must provide more details about its withholding under this privilege and whether factual information may be segregated and disclosed.

iii.  Emails Reflecting Policy and Legal Advice

This bucket of records contains emails that seek or give policy or legal advice.  Some emails only discuss legal advice.  Documents 64–69 consist of emails discussing legal issues related to the response to the attack.  All of these messages contain at least one U.S. government

lawyer in the communication.  Likewise, Document 70 is an email from a State Department official to a State Department lawyer asking for legal advice regarding the Accountability Review Board.  Documents 94–96 are emails of State Department attorneys providing legal advice to other government officials in connection with potential witness testimony.  These communications fall squarely under the attorney-client privilege, because they concern legal advice given in confidence by lawyers to their client, the Executive Branch, or requests by the client for such legal advice.  Disclosure would jeopardize agency officials' ability to freely give and receive legal advice in its operations.

Other emails contain a mix of legal and policy advice.  Documents 71–72 are emails raising policy and legal questions posed by a State Department employee to a State Department attorney, in relation to ICE-requested assistance regarding the attack.  Documents 73–74 are emails involving a State Department attorney who provided responses to legal and policy questions posed by the Under Secretary for Management regarding the attack.  The attorney-client privilege applies to these emails because they concern legal advice given in confidence by lawyers to their client, the Executive Branch, or requests by the client for such legal advice.  The privilege applies even though some advice was policy in nature, because obtaining legal advice was *one* of the significant purposes in these attorney-client communications.  The D.C. Circuit instructed in *In re Kellogg* that "obtaining or providing legal advice" need only be "one of the significant purposes of the attorney-client communication," and "[i]t is often not useful or even feasible to try to determine whether the purpose was A or B when the purpose was A and B." 756 F.3d at 760–61.

iv.  Other Records

The final bucket contains miscellaneous items.  Documents 75–78 are emails between Department of Justice attorneys and Department of State employees and attorneys seeking information about potential witnesses for the prosecution of the attack.  These emails discuss possible witnesses before reaching a final decision on this issue, are exchanged for the purpose of receiving legal advice from lawyers to their Executive Branch client, and specifically discuss litigation strategy.  Accordingly, they are adequately covered by Exemption 5's deliberative process, attorney-client, and attorney work product privileges.

Document 83 is an email chain reflecting disagreement among various agencies regarding security policies in Mexico.  The discussions highlight differences in opinion over the use and effect of security policies in Mexico and predates any final decision.  The email chain is predecisional because it predates any final decision on security policies.  It is deliberative because it reflects internal debates about this issue.  The Court finds that this record falls under the deliberative process privilege.  Disclosure would inhibit agency officials from discussing the strengths and weaknesses of different policy approaches.

Documents 84–85 are memos prepared by DHS related to a request from Mexico for a security briefing.  These memos recommend a course of action regarding the briefing, and predate a final decision about the briefing.  These documents are predecisional because they were prepared to assist the agency in arriving at a final decision and preceded the final decision.  They are deliberative because they reflect the agency's thought process in recommending a course of action.  These records fall under the deliberative process privilege.  Disclosure would chill agency officials' willingness to discuss proposed courses of action.

Document 86 is a DHS report on a visit by a senior U.S. official to Mexico City.  This is a close call.  On the one hand, the report is predecisional because it predates any final policy decisions and deliberative because it reflects evaluations of various policy options under consideration related to U.S. involvement in Mexico City.  On the other hand, it is unclear whether there are portions of this fully withheld report that "provide only facts," in which case those portions would not be protected by this privilege.  *See McGrady*, 635 F. Supp. 2d at 18 (declining to extend withholding to document containing facts which did not reveal the "substance of the deliberations").  The State Department should provide more details about its withholding under this privilege and whether factual information may be segregated and disclosed.

Document 98 is a cable that analyzes various shootings of U.S. personnel in Pakistan and Mexico and provides recommendations regarding security policies to prevent future serious injury and death as in the case of Agents Zapata and Avila.  The cable is predecisional because it predates any final agency review or decision on its recommendations.  It is deliberative because it assesses past events from the agency's perspective and provides recommendations to help the agency formulate security policies.  Disclosure would expose an agency's thought process before it formalizes a final opinion on a matter.

Document 106 is a spreadsheet that explains the Permanent Coordinating Committee's decision for not convening an Accountability Review Board regarding past security incidents involving U.S. personnel.  As far as the Court can tell, this spreadsheet explains the conclusions that the committee reached in past security incidents.  In other words, it is not predecisional.  Withholding this spreadsheet—especially in full—does not appear to be appropriate because the "deliberative process privilege does not protect documents that merely state or explain agency

decisions." *Judicial Watch Inc. v. U.S. Dep't Health & Human Servs.*, 27 F. Supp. 2d 240, 245 (D.D.C. 1998).  Nor is this the rare case involving a document postdating an agency's "macro level" decision that reveals subsequent "[d]ebate and discussion" about how to "persuasively communicate [the decision's] terms and rationale to the public." *Campaign Legal Ctr.*, 34 F.4th at --.  The State Department must therefore better explain its withholding or segregate portions of the spreadsheet that are subject to disclosure.  It may, however, continue to withhold any information on the basis of Exemption 1 as described above.

### C. Segregability

"An agency shall . . . take reasonable steps necessary to segregate and release nonexempt information."  5 U.S.C. § 552(a)(8)(A)(ii)(II).  Agencies typically meet their initial burden by providing a *Vaughn* index and "a declaration attesting that the agency released all segregable material." *Judicial Watch, Inc. v. U.S. Dep't of Just.*, 20 F. Supp. 3d 260, 277 (D.D.C. 2014). Once that is accomplished, "[a]gencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material."  *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).  The plaintiff must then produce a "quantum of evidence" rebutting this presumption, at which point "the burden lies with the government to demonstrate that no segregable, nonexempt portions were withheld." *Id.*

Here, the State Department provided an adequate *Vaughn* index that declared, for each responsive document, that the agency "conducted a line-by-line review of the document and determined that there is no meaningful, non-exempt information that can be reasonably segregated and released."  *See* State *Vaughn* Index at 1–52; *see also* Def. MSJ at 42–43. Director Stein stated that in the course of the State Department's search, "[w]here material was found to be exempt from disclosure, IPS reviewed this material to ensure that all non-exempt,

segregable information was released to the requester."  Stein Decl. ¶ 34.  Plaintiffs did not

attempt to rebut the State Department's assertion.  Therefore, with the exception of specific

documents discussed above that require the State Department's further review, the Court

concludes that the State Department has satisfied FOIA's segregability requirement.

## IV.  CONCLUSION

"Where, as here, an agency's descriptions fail to affirmatively establish each of the

essential elements of the claimed privilege, the district court has the discretion to order

disclosure or to afford the agency an additional opportunity to fully discharge its burden." *Jud.*

*Watch, Inc*, 841 F. Supp. 2d at 155.  The Court will give the State Department a second

opportunity, within 60 days of this opinion, to: (1) conduct an adequate search using more than

just Agent Avila's name as a search term, focusing on the February 15, 2011 attack that severely

wounded Agent Avila; and (2) with respect to the documents discussed herein in which the

government's motion is denied, describe with more specificity what information is being

withheld pursuant to which asserted privileges, and provide factual matter sufficient to establish

the necessary elements for those privileges, and assess whether factual matter can be segregated

and disclosed.  The parties are to submit a Joint Status Report two weeks after the ordered

actions have been taken, advising the Court of whether any outstanding issues remain in this

case.

For the foregoing reasons, Defendant's motion for summary judgment (ECF No. 41) is

**GRANTED IN PART AND DENIED IN PART**, and Plaintiffs' cross-motion for summary

judgment (ECF No. 45) is **GRANTED IN PART AND DENIED IN PART**.  An order

consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  June 10, 2022                                                RUDOLPH CONTRERAS
                                                                                United States District Judge